```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF ILLINOIS
                  EASTERN DIVISION
```

| | |
|---|---|
| United States of America | ) |
| | ) |
| | ) |
| v. | ) No. 19 CR 548 |
| | ) |
| | ) |
| | ) |
| Chawan Lowe, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>Memorandum Opinion and Order</u>

On March 12, 2020, after three days of trial and deliberations, a jury convicted Chawan Lowe of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Lowe moves for an acquittal or a new trial on the grounds that the evidence was insufficient to support his conviction and that putative trial errors cast doubt on the jury's verdict. The motion is denied for the following reasons.

The government's evidence included video surveillance footage showing an individual wearing a short-sleeved white t-shirt, blue jeans, white sneakers, red briefs, a dark cap, and a black backpack running down an alley in the 7800 block of South Sangamon Street in Chicago and stopping to throw a firearm into a trash can in the alley. The evidence also included the testimony of police officers who responded to a report of shots fired in the 7800 block of South

Sangamon and encountered Lowe in the area moments later. Additionally, the jury saw footage from the offers' body worn cameras, which showed Lowe wearing a short-sleeved white t-shirt, blue jeans, white sneakers, red briefs, a dark cap, and a black backpack at the time of his encounter with police.

The evidence also included the testimony of a ballistics expert who concluded that bullets and casing recovered from the scene of the reported shooting were fired by the firearm that was recovered from the trash can. In addition, forensics experts testified that neither the fingerprints nor the DNA samples taken from the recovered firearm were suitable for comparison with Lowe's, and that the gunshot residue found on Lowe's hand was inconclusive.

Lowe seeks acquittal on the ground the evidence was insufficient even when viewed in the light most favorable to the government. *See United States v. Bloch*, 718 F.3d 638, 641 (7th Cir. 2013). He argues that the physical evidence—the fingerprint sample, the DNA sample, and the gunshot residue—did not link him to the weapon; that the jury "ignored the idea that it was possible there were more th[a]n one person in the city of Chicago who were wearing a white shirt and blue jeans," Mot. at 3; and that the government offered only a "grainy" video and failed to present a friend, relative, or someone close to Lowe to testify that the

person observed throwing a firearm in the trash can was Lowe. *Id*. None of these arguments has merit.[1]

First, Lowe offers no authority to suggest that the government must offer physical evidence linking Lowe to the weapon to sustain its burden of proof, and indeed, it need not. *See, e.g., United States v. Bowman*, 353 F.3d 546, 548 (7th Cir. 2003) (upholding § 922(g)(1) conviction based on witness testimony supporting possession element, despite absence of "any physical evidence linking Bowman to the gun"). Second, setting aside that the similarities between Lowe's clothing and backpack at the time of his encounter with police and the clothing and backpack observed on the subject discarding a weapon in the trash moments earlier go well beyond a "white shirt and blue jeans," his argument boils down to speculation about the weight the jury gave to the identification evidence and does not support acquittal. *See United States v. Arthur*, 582 F.3d 713, 717 (7th Cir. 2009) ("we do not reassess the weight of the evidence"). His third argument—that the video was "grainy" and that the evidence did not include identification testimony by someone who knows him well—shares the

---

[1] To convict Lowe on the charge of unlawfully possessing a firearm as a felon, the government had to prove that Lowe: (1) possessed a firearm, (2) that had traveled in or affected interstate commerce, and (3) that he had the requisite felony convictions. *Bloch*, 718 F.3d at 642. As Lowe stipulated to elements (2) and (3), the only disputed issue for the jury was whether the evidence established beyond a reasonable doubt that he possessed the weapon recovered from the trash can.

infirmities of his first two. While the government could have asked a friend or relative to identify Lowe as the person seen in the surveillance, it had no obligation to do so and could rely on the jury's ability to observe the video and give that evidence the probative weight it deemed appropriate.

Lowe seeks a new trial on the ground that errors at trial had a "reasonable possibility" of prejudicing the outcome. The errors he claims are: 1) that I allowed evidence that a shooting occurred, which he claims was improper under Rule 404(b) and 403; and 2) that I failed adequately to probe the response of a juror who, when polled to determine whether his individual verdict was guilty, answered, "Yes. Barely." Additionally, Lowe argues that the jury's verdict was prejudiced by cumulative errors, including that I declined to appoint him more than one attorney and ruled erroneously on his pretrial motions and in-court objections.

Evidence that a shooting occurred was probative of Lowe's possession of the weapon because it supported the government's timeline and interpretation of events when taken together with the video footage and ballistics evidence. Moreover, the evidence was limited in scope to avoid prejudice: the government introduced evidence that officers responded to a call of shots fired; that evidence technicians recovered bullets and shell casings near 7812 South Sangamon; and that the firearm recovered from the trash can fired those bullets and shell casings. The government did not

4

introduce evidence that a person had been shot or other evidence that could arguably have been prejudicial. Finally, I instructed the jury that it could consider the evidence only for the purpose of deciding whether Lowe possessed the firearm at issue and for no other purpose. Jurors are presumed to follow instructions, *United States v. Flournoy*, 842 F.3d 524, 528 (7th Cir. 2016), and Lowe offers nothing to suggest that it did not do so in this case.

Lowe's second argument focuses on this portion of the trial transcript:

> **THE COURT**: Jason Shanfield, does the verdict, as published, constitute your individual verdict in all respects?
> **JUROR SHANFIELD**: Yes. Barely.
> **THE COURT**: You said yes?
> **JUROR SHANFIELD**: Yes, ma'am.

Tr. of 03/12/20 at 310. Lowe characterizes Juror Shanfield's response as reflecting "reluctance" and asserts that my follow-up question had a coercive affect on his verdict. But the colloquy above is nothing like those in which courts have determined that a juror was coerced. *See, e.g.*, *United States v. Carraway*, 108 F.3d 745, 750 (7th Cir. 1997) (during polling, juror "revealed that she did not agree with the jury's finding," and the court directed the jury to continue deliberations even after the foreperson indicated that it could not reach a unanimous verdict and that further deliberations would not be fruitful); *Sincox v. United States*, 571 F.2d 876, 877 (5th Cir. 1978) (judge accepted

5

jury's verdict of guilty despite polled juror's response that he found the defendant guilty "[w]ith reasonable doubt."). Here, by contrast, Juror Shanfield, who was a lawyer, did not indicate disagreement with the verdict; he simply indicated that he found the government's evidence to be minimally sufficient to carry its burden—a view that he reiterated upon questioning.

The remainder of Lowe's arguments are skeletal and offer no reasoned legal or factual basis for granting a new trial.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 12, 2020